**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE: COUNCIL ON AMERICAN ISLAMIC RELATIONS, MICHIGAN**, | Misc. Docket No: |
| | JUDGE: |
| Subpoenaed Non-Party. | MAGISTRATE: |

**NON-PARTY CAIR-MI'S MOTION TO
QUASH DEFENDANT'S SUBPOENA DUCES TECUM**

Non-party Council on American Islamic Relation, Michigan ("CAIR-MI"), by and through undersigned counsel, hereby moves, pursuant to Fed.R.Civ.P. 45(d)(3)(A);(B), to quash the subpoena duces tecum served by Asma Lori Haidri Saroya ("Saroya"), the defendant in the underlying action, pending in the United States District Court for Minnesota, *CAIR Foundation, Inc., d/b/a/ Council on American Islamic Relations & CAIR v. Asma Lori Haidri Saroya a.k.a. Lori Saroya, Asma Saroya, Lori Haidri, Lori Haidri-Saroya, & LH* Case No. 21-cv-01267 (SRN/TNL), because compliance would subject CAIR-MI to an undue burden, intrude upon privileged and confidential information, expose CAIR0MI and its supporters to harassment, and inflict a scope of discovery grossly disproportionate with Sorya's needs. A true and accurate copy of the subpoena is attached hereto as Exhibit A, while a description of the burden, privileges, confidentiality, harassment and proportionality is provided in both the Momorandum of Support of this motion

1

and the Declaration attached as Exhibit B from the CAIR-MI board President and Legal Advocacy Chair and its attachments.

## MEMORANDUM IN SUPPORT OF THE NON-PARTY CAIR-MI'S MOTION TO QUASH DEFENDANT'S SUBPOENA *DUCES TECUM*

I.  **Background**

The underlying litigation centers on repeated public statements, typically on social media, by Saroya denouncing CAIR for a multitude of sins, ranging from owing her money, through seeking to intimidate her, to tolerating sexism and racism. Even though CAIR commenced this litigation, Soraya has now served a subpoena duces tecum on non-party CAIR-MI.[1]

The place designated for CAIR-MI to produce voluminous documentation is Recon Management Group, LLC located at 30400 Telegraph Road, Suite 472, Bingham Farms, MI 40825. Under Fed.R.Civ.P. 45, this Court is the court for the district where compliance is required and the forum for resolving a motion to quash a subpoena ministerially issued at the request of Saroya's attorneys by the Minnesota court in the underlying action.

---

[1] The subpoena duces tecum was improperly served to CAIR-MI by placing it under the door of the Executive Director's office at some unknown time most likely the weekend of October 1-3 and was found on or about October 7th. The Subpoena was eventually served properly to the Executive Director after the close of business on November 11th when he was called back to the office after leaving for the day by a staff member solely for the purpose of accepting service of the subpoena in question.

2

Saroya headed CAIR-Minnesota from 2007 through 2014 and then served as CAIR's National Chapter Development Director and Board Member during the period from 2016 to 2018. The underlying diversity litigation was commenced by CAIR and alleges four counts: (1) defamation; (2) defamation per se; (3) tortious interference with business relationships; and (4) misappropriation of confidential information.

II. **Non-party Status of CAIR-MI**

CAIR-MI is a separate legal entity from CAIR. CAIR-MI is registered, and in good standing, as a nonprofit charitable organization with the Michigan State Department of Licensing and Regulatory Affairs ("LARA"). See Exhibit C and Ahad Dec. ¶ 6.

In contrast, CAIR is a District of Columbia non-profit corporation that has registered and trademarked the logo and name CAIR with the United States Patent and Trademark office. See Ahmad Dec ¶ 7

CAIR-MI is a licensee of CAIR operating under an affiliation agreement. Id at ¶ 8. In the underlying action, Saroya has argued that on its website CAIR refers to its Chapters across the United States and has declared that CAIR is actively engaged with operating its chapters. As to CAIR-MI, its "employment practices, budgets, and finances have been controlled solely by CAIR-MI with no interference from CAIR," and it is controlled and managed solely by local board of directors of

CAIR-MI." Ahamd Dec ¶¶ 9-11. Saroya has not suggested, moreover, that the chapters control CAIR.

First, the licensing agreement and registration with LARA- CAIR is not so registered - establishes that CAIR-MI is a separate legal entity.[2] Second, in his Declaration, CAIR-MI's board President expressly denies that CAIR governs or interferes with CAIR-MI's operations. Ahmad Dec. ¶¶ 9-11. Third, the Complaint in the underlying action reproduces and incorporates Saroya's social media and other communications, yet, apart from the undeveloped facts of her sending any communication to CAIR-MI, none of them refer to CAIR-MI or its employees. Fourth, CAIR-MI had nothing to do with drafting or bringing the underlying action. Id.¶ 23-24. Fifth, CAIR-MI has not alleged that Saroya engaged in misconduct when she was employed by CAIR. Id. ¶22.[3]  Sixth, CAIR-MI has no claim for damages from Saroya's social media postings or other statements. Id. At ¶25.[4]

### III. Saroya's Subpoena Duces Tecum Is Remarkably Overbroad, Intrusive, and Unduly Burdensome. on CAIR-MI

---

[2] Look up MI Stature req registration of non profit corps here.

[3] A comprehensive search must apparently still be made to comply with Request No . 4: "All documents referring to or relating to or reflecting or constituting evidence that Saroya has ever engaged in 'harassment' or 'abusive' conduct of any kind." Notably, Saroya was never an employee at CAIR-MI, and Saroya's argument that CAIR reaches into the internal operations of "Chapters" does not stretch to insinuate that "Chapters" control CAIR.

[4] A comprehensive search must apparently still be made to comply with Request No.5: "All documents referring or relating to or reflecting or constituting evidence that statements by Saroya have adversely affected Your [defined as CAIR-MI] or CAIR's fundraising revenue."

4

Saroya has made 27 substantive requests for production, prefaced by instructions and definitions, in her subpoena duces tecum. The definitions expand the breadth at every turn, a dynamic captured by the preface -- "Notwithstanding any definition below, each word, term, or phrase used in the Request is intended to have the broadest possible meaning." - and confirmed by the last definition: "If the requested documents are maintained in a file, the file folder is included in the request for production of those documents." The inherently broad terms "concerning"; "relate"; and "relating to" are further defined to be boundaryless.

For example, the first Request sought "[a]ll documents referring or relating to Saroya, or in any way concerning Saroya, by whatever name"; the second for "[a]11 documents referring to or relating to or reflecting or constituting communications between Saroya or any of Your officers, employees or directors, past or present"; and the third the same except without the "between" phrase. Only one Request had a specific time period; the default time period is provided by Instruction No. 6, "Unless otherwise stated, these Requests are for the period from 2011 to the present." Thus, ten years' worth of documents have been subpoenaed. CAIR-MI is not a corporation staffed with informational technology experts. Most of its documents are not even "stored in a manner susceptible to computer search and retrieval nor otherwise indexed in any meaningful way or inventoried; consequently, compliance with Defendant's subpoena duces tecum would require searching by hand, document

by document." Ahmad Dec.¶ 14. CAIR-MI's board President estimates that compliance would necessitate hiring "multiple employees or contractors to go through boxes and cabinets of documents" Id. ¶14-18. CAIR-MI has three (3) full-time and one (1) part-time employee "none of whom has a full-time information technology or computer operator designation or duties." Id.

Additionally, CAIR-MI does not utilize, own, or operate under a local networking system, nor does CAIR-MI own, operate or utilize a central document or data storage system. Each individual employee, officer, agent of CAIR-MI both past and present have created, stored or otherwise saved documents on their individual computers many of which were recycled in August of 2020 when CAIR-MI moved offices from Farmington Hills, Michigan to its current location in Canton, Michigan. Id at ¶19.

CAIR has access to all work emails used by CAIR-MI staff as the emails are on a server run, managed, and controlled by CAIR. Additionally, CAIR-MI staff are also on various list serves which are run, controlled, and managed by CAIR and these list serves have potentially thousands of emails which mention Defendant. It would be very burdensome and time-consuming for non-party CAIR-MI's staff to find relevant emails especially when considering the fact that the party to this lawsuit, CAIR, is the host and has access to all these emails. Id at ¶¶ 20-21.

Request No. 6 seeks "[a]ll documents referring to or reflecting donations, gifts, or grants to You." As its full name indicates, the mission of CAIR-MI is to: "Enhance the understanding of Islam, encourage dialogue, protect civil liberties, empower American Muslims and build coalitions that promote justice and mutual understanding through education, mediation, media and the law." Ahmad Dec. ¶5

CAIR-MI has endured attacks for protecting the right of Muslims in Michigan. The board President "has observed the effects of political polarization in Michigan, particularly characterizing Muslim- Americans as enemies of the United States, terrorists, and/or untrustworthy." Id. at 26. He described the specific mistreatment CAIR-MI has suffered: "CAIR-MI's name has been mentioned by elected officials in Michigan as has the name of our executive director, Dawud Walid, in an attempt to characterize CAIR-MI as untrustworthy and supporting terrorism as enemies of the United States. CAIR-MI has received harassing and threatening phone calls and letters from the public for over twenty years and in 2017 was warned by the Farmington Hills Police Department that the CAIR-MI office was being targeted for a possibly violent attack prompting police officers to visit the office to deliver the warning and to step up patrols in and around the vicinity of its office for period of time." Id at ¶¶ 27-28.

"CAIR-MI maintains the anonymity of its contributors to the maximum extent permitted by law, largely because of the political polarization and the way it chills

7

contributors." Id. at 29. Production would smash that anonymity, be likely to expose donators to retaliation, and be viewed by putative donors as posing such a risk. This past term, the United States Supreme Court reaffirmed First Amendment protection in such situations.

California had required that charitable organizations "disclose to the state Attorney General's Office the identities of their major donors." *Americans for Prosperity Found. v. Bonta,* 141 S. Ct. 2373, 2379 (2021). Organizations "alleged that disclosure of their Schedule Bs would make their donors less likely to contribute and would subject them to the risk of reprisals." Id. at 2380. Quoting from *NAACP v. Alabama ex rel. Patterson,* 357 U.S. 449, 462 (1958), the Court, 141 S.Ct. at 2382, stated: "We have also noted that '[i]t is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as [other] forms of governmental action.'"

Recognizing that "*NAACP v. Alabama* involved this chilling effect in its starkest form," the Court proceeded to declare California's requirement facially unconstitutional based on the type of threats and harassment CAIR-MI has received. Id. at 2382, 2388 (recognizing that Googling and similar searches can lead to residential and other sensitive information). The critical point was the recognition in *NAACP v. Alabama*, 357 U.S. at 462, of "the vital relationship between freedom to associate and privacy in one's associations." Indeed, near the ending of its opinion,

the Court, quoting from *NAACP v. Button*, 371 U.S. 415, 433 (1963), stated: "The risk of a chilling effect on association is enough, '[b]ecause First Amendment freedoms need breathing space to survive.'"

The Court seemingly anticipated the type of response Saroya will make by her invoking the protective order in the underlying case. Quoting from *Shelton v. Tucker*, 364 U.S. 479, 386 (1960), the Court, 141 S.Ct. at 2388, explained: "Our cases have said that disclosure requirements can chill association '[e]ven if there [is] no disclosure to the general public.'" The Court emphasized that "[e]xacting scrutiny is triggered by 'state action which may have the effect of curtailing the freedom to associate,' and by the 'possible deterrent effect' of disclosure." Id. (citing with emphasis added *NAACP v. Alabama*, 357 U.S., at 46 1).

To bring home its holding, *Banta*, 141 S.Ct. at 2388, appreciated "[t]he gravity of the privacy concerns" by citing amici curiae briefs, including "from the Council on American-Islamic Relations [CAIR]." The same conclusion the Court then reached applies to Saroya's subpoena duces tecum: "The deterrent effect feared by these organizations is real and pervasive, even if their concerns are not shared by every single charity operating or raising funds in California." *Id*. Furthermore, it must be emphasized again that non-party CAIR-MI has no claim for damages or loss of donors or organization detriment from Saroya's social media postings or other statements. Ahmad Dec. ¶ 25.

Saroya's Requests Nos. 7-12, 24 seek "[a]ll documents referring or relating to or reflecting or constituting" all claims or allegations made against CAIR-MI, including those by present or former employees and confidentiality or non-disclosure agreements between CAIR-MI and those present or former employees." Production would involve "employee personnel files, records or references to discipline, and confidential, private information." Ahmad Decl. ¶34.

Requests Nos. 13-16, 21-23 seek "[a]ll documents referring or relating to" named individuals, yet, with one exception, none was "employed by CAIR-MI or involved in any non- trivial way with the activities of CAIR-MI." Ahmad Decl. ¶ 36.

Request No. 17 sought "[a]ll documents referring or relating to or constituting consulting reports, internal or external investigative reports, or other reviews relating in any way to Your management or Your handling of claims or grievances." Even apart from any self-critical analysis privilege, Saroya's request has barely arguable relevance while seeking ten years' worth of documents about CAIR-MI's management and claims or grievances. To reiterate, CAIR has sued Saroya, and CAIR-MI is a licensee, not a co-conspirator. The Complaint against Saroya by CAIR which details Saroya's many denouncements of CAIR in her social media posts and statements, does not consist of a single post or statement targeting CAIR-MI.

Request No. 18 demanded production of "[a]ll documents referring or relating to or constituting the testimony, whether by affidavit, deposition or otherwise of any

of Your officers or employees in any judicial or administrative proceeding." Even apart from any protective orders that sought to limit use of such testimony to the specific proceeding, Saroya's request is virtually a dictionary definition of a fishing expedition. Proceedings ranging from unemployment compensation and discrimination or retaliation claims through tax, landlord-tenant, and premises liability to every other kind for the past ten years are sought. As before, Saroya has not posted on social media or made a statement alleging CAIR-MI mistreated her during her employment with CAIR.

Requests Nos. 19 and 20 seek "[a]11 documents referring or relating to regular meetings or conference calls between You, or any of Your officers or employees, and CAIR's Executive Director, CAIR chapter officials, or CAIR senior staff' and, in the one Request with a 2018-19 timeframe, rather than for ten years, "[a]11 documents referring or relating to or reflecting the work of any committee" established "to evaluate CAIR's finances and related matters." The scope is breathtaking: conference calls with CAIR senior staff occur frequently, cover a wide range of topics, and are seldom documented, though references or documents relating to them are natural. Whatever relevance Saroya claims is eclipsed by the undue burden, particularly in light of the largely futile searches for any variation of her name.

Request No. 24 seeks "[a]ll documents referring or relating to or reflecting or constituting communications between You, or any of your officers or employees, and any officer, director or employee of any CAIR chapter or affiliate regarding allegations of religious, gender or sexual discrimination, sexual harassment or assault or retaliation." The breadth ignores the duty of a party to show that she and her proposed comparators were similar in all relevant respects, and that he and his proposed comparators engaged in acts of comparable seriousness." *Bobo v. United Parcel Serv., Inc.,* 665 F.3d 741, 751 (6th Cir. 2012). The disproportion is obvious: Saroya was never employed by CAIR-MI, let alone supervised by CAIR-MI managers.

Requests Nos. 25 and 26 seeks "[a]ll documents referring or relating to or reflecting or constituting tax filings of any kind by or on behalf of You, including all schedules and amendments" and those on "compensation paid to Your officers or directors." CAIR-MI treats its tax filings, apart from the 990 filing with the IRS that is publicly available, as confidential and trade secrets. Ahmad Dec. ¶ 38. Federal courts generally resist discovery of tax returns. See, e.g., *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225,229 (9th Cir. 1975).

Request No. 27 seeks "[a]ll documents referring or relating to or reflecting or constituting communications relating to the practice of law or the purported practice

12

of law, or the provision of legal services or the purported provision of legal services, by Morris Days, Roman Iqbal, Danette Zachary-Mask and Lena Masri." CAIR-MI has never had any involvement with Days and barely any involvement with Zachary-Mask and Iqbal, and Masri was a firmer employee of CAIR-MI, she is currently in the role of Legal Director for CAIR. Ahmad Dec. ¶ 41-43 (Days and Zachary-Mask were never employed or supervised by CAIR-MI and even minor interactions with Zachary-Mask did not involve Saroya). Every single case CAIR-MI has brought or defended and most of its administrative docket for the past ten years are encompassed by Request No. 27 and the entire file is sought, regardless of attorney-client communication or work product, for each. Yet, "[n]one of CAIR-MI's attorneys practice of law or provision of legal services has involved in any non-trivial way Defendant Saroya," Id. at 47, and "[c]omplying with Request No. 27 would require production of attorney-client communications and/or work product." Id. at 48.

## IV. Rule 45 Empowers this Court to both Quash the Subpoena Duces Tecum and Award CAIR-MI Its Attorney's Fees and Costs.

Fed.R.Civ.P. 45(d)(3)(A) requires a subpoena to be quashed by "the court for the district where compliance is required" when it either "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(B)(i) permits a subpoena to be quashed if production results in "disclosing a trade secret or other confidential

research, development, or commercial information." The undue burden analysis is guided by the proportionality standard under Fed.R.Civ.P. 26, though "a subpoena issued against a nonparty" involves a "more demanding variant of the proportionality analysis." *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir.), cert. denied, 140 S.Ct. 672 (2019). "When discovery is sought from nonparties, however, its scope must be limited even more." Id. Such third parties "should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id*.

In the balancing, "courts should consider not just the relevance of information sought, but the requesting party's need for it. The information sought must likely (not just theoretically) have marginal benefit in litigating important issues.... Courts should also consider what information is available to the requesting party from other sources. To that end, the requesting party should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation[.]" *Id*. at 189-90 (citations and footnotes omitted). Beyond "the dollars-and-cents costs associated with a large and demanding document production" are "cognizable burdens" such as "invading privacy or confidentiality interests." *Id*. · Personnel documents are especially sensitive in this sense. *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 516-17 (D. Minn. 1997) ("the personnel files of an entire class of employees should not be

produced, even in an employment discrimination proceeding, absent a compelling showing of relevance").

The bottom line is that, "even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 {8th Cir. 1999) (quotation omitted). Thus, "subpoenas issued under Rule 45 are subject to the same "constraints that apply to all of the other methods of formal discovery."' *Shukh v. Seagate Tech., LLC*, 295 F.R.D. 228, 236-37 {D. Minn. 2013) (quoting *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.,* 177 F.R.D. 443, 443 (D.Minn.1997)). Accord *Cook v. Howard*, 484 Fed.Appx. 805, 812 & n.7 (4th Cir. 2012) (per curiam) {"This ground encompasses situations where the subpoena seeks information irrelevant to the case or that would require a non-party to incur excessive expenditure of time or money[.]").

In the Sixth Circuit, undue burden imposed by discovery is assessed on a case-by-case basis, "considering such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *In re: Modern Plastics Corporation,* 890 F.3d 244, 251 (6th Cir. 2018) {internal quotation omitted). While discovery is liberal, the "desire to allow broad discovery

is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 906 (6th Cir. 1991). Overbroad requests that are unduly burdensome to produce are improper. *Surles ex rel. Johnson v. Greyhound Lines, Inc*., 474 F.3d 288, 305 (6th Cir. 2007) ("Although a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted 'to "go fishing" and a trial court retains discretion to determine that a discovery request is too broad and oppressive."') (citation omitted).

Rule 45(d)(1) imposes a duty on Saroya and her attorneys: they "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Subpoenaing ten years' worth of documents is unreasonable given CAIR-MI's noninvolvement in the underlying litigation, its records maintenance, and its small staff. See, e.g., *Dakota Energy Coop., Inc. v. E. River Elec. Power Coop., In*c., No. 4:20-CV-04192-LLP, 2021 WL 3862131, at *4 (D.S.D. Aug. 30, 2021) ("[T]he court notes that the discovery requested would cover, at most, a matter of a few months. Dakota Energy is not asking for years' worth of documents as to communications between third parties and East River and Basin."). The remarkable breadth of the requests is also unreasonable: "Broad, permissible discovery does not include requests for 'all documents' that 'relate in any way' to a complaint. See, e.g., *Doe v. Nebraska*, 788 F. Supp. 2d 975, 982 (D. Neb. 2011) (denying motion to

16

compel answers to interrogatories that effectively sought identification of 'all documents related in any way to this case' as 'a fishing expedition')." *JMIR Marquette Hotel LLC v. Cty. of Hennepin*, No. 27-CV-19-5739, 2021 WL 1288720, at *7 (Minn. Tax Apr. 2, 2021).

Courts regularly strike such requests. See, e.g., *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1038 (8th Cir. 201 l)(upholding the district court's determination that a request seeking all donations during a lengthy period was overbroad); *Robbins v. Camden City Bd. of Educ.*, 105 F.R.D. 49, 50 (D.N.J. 1985). As explained in *Doe v. Nebraska*, 788 F. Supp. 2d 975, 982-83 (D. Neb. 2011), asking for "all" documents "that relate in any way" to allegations is "akin to asking the defendants to identify 'all documents related in any way to this case."' Saroya's requests are not quite that broad, but they are facially excessive in the same way and the same conclusion - "The unfettered nature of these requests appears to be a fishing expedition." *Id.* -applies. The blatant intrusion on privileged or confidential areas is similarly indefensible.

Rule 45(d)(l) mandates awarding fees and expenses: "The court for the district where compliance is required must enforce this duty [of talcing reasonable steps] and impose an appropriate sanction- which may include lost earnings and reasonable attorney's fees - on a party or attorney who fails to comply." CAIR-MI is by all accounts unrelated to the underlying dispute between CAIR and Saroya. As a

17

licensee, CAIR-MI is a non-party, and, as a factual matter, its involvement in any way, shape, or form with Saroya has been less then peripheral. Her silence about CAIR-MI in all of her noisy denunciations of CAIR is telling. No sufficient justification exists for pulling CAIR-MI into the underlying dispute, inflicting an undue burden on it, and intruding on privileged or confidential information.

## V. Conclusion

For the foregoing reasons, Saroya's subpoena duces tecum should be quashed and the fees and costs it incurred awarded.

                                                Respectfully Submitted,

                                                /s/Amy V. Doukoure
                                                Amy V. Doukoure (P80461)
                                                CAIR-MI
                                                1905 S. Haggerty Road, Suite 5
                                                Canton, MI 48188
                                                (248) 559-2247
                                                adoukoure@cair.com

DATED: November 26, 2021

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was sent to the Clerk for filing this 26th day of November, 2021, via UPS and was served upon the following via email:

Alain Baudry (alain.baudry@saul.com)
Steven Kerbaugh (steven.kerbaugh@saul.com)
Jeffrey Robbbins (jeffrey.robbins@saul.com)
Joseph Lipchitz (joseph.lipchitz@saul.com)
Cindy B. Morgan (cmorgan@rubinfortunato.com)
Michael Fortunato (mfortunato@rubinfortunato.com)
Carl E. Chrisensen (carl@clawoffice.com)